UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

JERRY J. LUNDY
W4183 County Road W
Waldo, WI 53093

   Plaintiff,

   v.            Case No: 17-CV-1467

DR AG SERVICES, INC.    **JURY TRIAL DEMANDED**
1935 Deerfield Drive
Saukville, WI 53080

   Defendant.

## AMENDED COMPLAINT

  COMES NOW the Plaintiff, Jerry J. Lundy, by his counsel, HEINS EMPLOYMENT LAW PRACTICE LLC, by Attorneys Janet L. Heins and Alan Freed, Jr., as and for a claim against the Defendant, alleges and shows to the court as follows:

  1.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12112, *et seq.*

  2.  The unlawful employment practices giving rise to Plaintiff's claims occurred within the Eastern District of Wisconsin, and venue is therefore proper in this District pursuant to 28 U.S.C § 1391(b), *inter alia.*

  3.  The Plaintiff, Jerry J. Lundy, is an adult male resident of the State of Wisconsin residing at W4183 County Road W, Waldo, Wisconsin 53093.

4. The Defendant, DR Ag Services, Inc., at all times material herein was a domestic corporation with a principal office located at 1935 Deerfield Drive, Saukville, Wisconsin 53080.

5. Plaintiff is a veteran of the United States Marine Corps and has served two combat deployments in support of Operation Iraqi Freedom.

6. Plaintiff has been diagnosed with and suffers from Post-traumatic Stress Disorder (PTSD) as a result of his two tours of duty in Iraq, for which he receives treatment through Veteran Affairs (VA).

7. After leaving the military, Plaintiff attended Fox Valley Technical College in Appleton for approximately a year and a half where he was trained to be a diesel mechanic and received several certifications in diesel mechanics.

8. Defendant hired Plaintiff as a part-time truck driver in November 2013 for occasional weekends while Plaintiff was employed full-time elsewhere as a diesel mechanic. Plaintiff did not hold a commercial driver's license (CDL).

9. At all times material herein, Plaintiff performed his job duties in accordance with the reasonable expectations of his employer.

10. Plaintiff's boss and the owner of Defendant, Dan Risch, told Plaintiff that he did not need a CDL for his part-time driving work at Defendant.

11. Plaintiff applied for full-time work at Defendant after Risch promised him more hours and better wages than his full-time position elsewhere. Plaintiff accepted the position but made it clear to Risch that he did not want to be a driver, that he was to be a mechanic, which is what he went to school for and was trained as. Risch agreed, and Plaintiff gave his two week notice at his other job and began working full time at Defendant on April 10, 2014.

12. Plaintiff called the Wisconsin Department of Transportation (DOT) in October

2

Case 2:17-cv-01467-WED   Filed 11/10/17   Page 2 of 7   Document 4

2014 to ask if the type of work being performed by drivers at Defendant required a CDL.

13. Later that day after he called the DOT, Plaintiff learned that Defendant's employees were discussing that he had called the DOT and they were coming to Defendant to pull trucks over and inspect the trucks and check for CDLs. Jen Risch, the owner's wife, texted him that day, "there's a rumor going around that you called DOT. That's fine, they can come anytime they want, they are more than welcome!"

14. When Risch learned of Plaintiff's call to the DOT, he fired the Plaintiff. He later rehired Plaintiff.

15. Instead of maintaining written employee schedules, Risch would call his employees with work assignments, which would regularly include work weeks well in excess of forty hours per week for full-time employees, especially in busy seasons.

16. Despite being told he was hired to be a mechanic, Plaintiff did mostly driving for the Defendant.

17. Plaintiff did not desire to be a driver, he was not hired as one, and he would not have left his prior employment if he believed that would be his position at Defendant. Despite the terms of his employment being misrepresented to him, Plaintiff kept the job in order to be able to provide for his family.

18. During Plaintiff's employment by Defendant, Risch objected to Plaintiff making VA appointments for his PTSD.

19. In January 2015, Defendant held a meeting for employees that Plaintiff attended in which Risch told the employees that they did not need CDLs, but there was a possibility that they could need one in the future.

20. In April 2015, Risch told Plaintiff by telephone that he would definitely need to

obtain a CDL for his employment right away.

21. As a result of Plaintiff's PTSD, Plaintiff's doctors recommended in Spring 2015 that Plaintiff obtain a service dog. Following this recommendation, Plaintiff received and began training for using a service dog.

22. Risch was aware of Plaintiff's need for a service dog and told Plaintiff that he had no problems with Plaintiff having a service dog.

23. Plaintiff advised Defendant that he would need a federal medical card cleared through the VA, because that is where he received medical treatment for his disability.

24. On May 13, 2015, Risch called Plaintiff and told him that he needed him to work on May 15 and 16, 2015. Plaintiff responded that he had service dog training on May 15, 2015, and would not be able to work during that time. Risch said something to the effect of "that throws a wrench into all of my plans" and hung up the phone.

25. After this telephone conversation on May 13, 2015, Risch stopped calling Plaintiff to work.

26. Defendant had a mechanic working who was in possession of a CDL but never drove trucks while Plaintiff, who was a mechanic and did not have a CDL, was forced to drive Defendant's trucks without a CDL.

27. Shortly after Plaintiff's conversation with Risch on May 13, 2015, Jen Risch called him and informed Plaintiff that Defendant would need paper work stating what he was diagnosed with, when he was diagnosed and why he needed a service dog.

28. Plaintiff requested a letter from his treating psychologist answering Defendant's questions, and she responded in a letter to Plaintiff dated May 19, 2015, noting that "I am writing at the request of Mr. Jerry John Lundy to provide treatment recommendations consistent with ongoing

4

care received at the Zablocki Veteran's Affairs-Medical Center. Mr. Lundy is being treated at the VAMC to address issues secondary to two combat deployments in support of Operation Iraqi Freedom (OIF). Based on Mr. Lundy's current diagnoses, it is my recommendation and consistent with our ongoing treatment that he obtain a service dog. Thus, it is my recommendation that he be allowed to have a service dog accompany him in vocational environments." Plaintiff received a copy of the letter on May 22, 2015 and sent it to Defendant.

29. Also on May 22, 2015, Jen Risch texted him, stating, "Jerry, I requested over two weeks ago the information needed by our attorney from your doctor and psychologist so that we can do what is needed when it comes to your health and your requirements to move forward with DR Ag. I also spoke with you again on 5/17 in which you stated you would have something faxed and mailed. We have received nothing to date. We are needing this information no later than 5/27/15 as we feel we have given you adequate time to produce the documents needed. Unfortunately we cannot hold the position or anyone's for that matter inevitably. So please have this paperwork mailed to us as we requested…."

30. On May 26, 2015, Plaintiff underwent his medical examination for the CDL.

31. In late May 2015, Plaintiff was contacted by a co-worker who noticed he had stopped coming to work and inquired as to why. Plaintiff told him that Risch had stopped calling him, to which the co-worker replied something to the effect, "Yeah, that is how Dan fires people by not calling them to work anymore."

32. On or about June 4, 2015, Plaintiff filed a charge of disability discrimination against Defendant with the Wisconsin Equal Rights Division, ERD Case No. CR201501480, cross-filed later with the Equal Employment Opportunity Commission as EEOC Case No. 26G201701055C.

33. On June 18, 2015, after not hearing from Risch for several weeks calling him to

work, Plaintiff went to Defendant to pick up his second toolbox, at which time Risch began to call Plaintiff a "fucktard" and all other manner of hostility, clearly indicating the relationship was ended.

34. Defendant did not engage in an interactive process with Plaintiff to determine if it could reasonably accommodate his disability.

35. Plaintiff amended his charge of discrimination with the ERD on July 20, 2015.

36. The EEOC issued a Notice of Right to Sue on this charge on August 2, 2017, which Plaintiff received on August 3, 2017.

37. Plaintiff has exhausted his administrative remedies and satisfied all conditions precedent to this action.

## CLAIM FOR RELIEF — ADA VIOLATIONS

38. Plaintiff realleges and incorporates paragraphs 1- 42 of this complaint by reference.

39. Defendant intentionally discriminated against Plaintiff by refusing to accommodate his disability and terminating his employment because of his disability, in reckless disregard of his federally protected rights under the Americans with Disabilities Act, as amended, 42 USC § 12112, *et seq*.

40. As a result of Defendant's intentional discrimination, Plaintiff has suffered damages in the form of pain and suffering, emotional distress, and loss of wages and other employment benefits.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing appropriate back pay, front pay and/or reinstatement, compensatory damages, punitive damages, pre-judgment and post-

judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

2. Grant to Plaintiff his attorney fees, costs and disbursements as provided by 29 U.S.C. § 794a, 42 U.S.C. § 12205, and all other applicable statutes and provisions; and

3. Grant to Plaintiff whatever other relief this Court deems just and equitable.

**PLAINTIFF DEMANDS A JURY OF TWELVE AS TO ALL TRIABLE ISSUES.**

Dated this 10th day of November, 2017.

                                                HEINS EMPLOYMENT LAW PRACTICE LLC
                                                Counsel for the Plaintiff

                                                *s/ Janet L. Heins*
                                                Janet L. Heins, State Bar No. 1000677

HEINS EMPLOYMENT LAW PRACTICE LLC
1001 West Glen Oaks Lane, Suite 103
Mequon, Wisconsin 53092
(262) 241-8444 voice
(262) 241-8455 facsimile
e-mail: jheins@heinslawoffice.com